Argued and submitted July 19, reversed and remanded with instructions
September 6, 1995

Virginia M. HOLMAN,
*Appellant,*

*v.*

PACIFIC HEALTH & LIFE
INSURANCE COMPANY,
*Respondent.*

(9308-05161; CA A84983)

902 P2d 106

Christopher A. Rycewicz argued the cause for appellant. With him on the briefs were Stewart Sokol & Gray and Michael J. Knapp, Myers & Knapp.

Brian L. Gingerich argued the cause for respondent. With him on the brief was Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Plaintiff insured appeals from the trial court's granting of defendant health insurer's motion for judgment notwithstanding the verdict and the ensuing judgment in this action for breach of the policy. We reverse and remand with instructions to enter judgment for plaintiff.

■ We view the facts favorably to plaintiff, for whom the jury found. In August 1992, plaintiff had a regular semi-annual examination with her gynecologist, Dr. Corwin. As a routine part of the examination, a mammogram was performed, and it revealed "an area of increased density in the left breast." The x-ray report contained the summary:

> "It seems unlikely that this represents anything other than evolving normal or dysplastic tissue, possibly even an inflammatory lymph node."

Corwin referred plaintiff to a specialist, Dr. Rothenberger. After conducting an examination and review, Rothenberger informed plaintiff and Corwin, and made corresponding notations in his records, that there was no evidence of pathology and no occasion for concern in the mammogram results or the follow-up procedures. In his letter to Corwin, Rothenberger noted that, although he found "nothing of concern," closer than usual follow-up was appropriate, and that he had "suggested to [plaintiff] that she obtain a follow-up mammogram of the left breast through [Corwin's] office in six months" — the interval at which her next appointment with Corwin and her next mammogram were already planned.

Shortly after those consultations with Corwin and Rothenberger, plaintiff applied to defendant for health coverage, apparently to replace group coverage that became unavailable because of a change in her job situation. In February 1993, after defendant had issued the policy, plaintiff noticed a mass in her left breast. It proved to be malignant. She was treated by a lumpectomy, chemotherapy and radiation between March and September. Defendant refused to pay for the treatment, claiming that plaintiff had failed to disclose "the mammogram results and necessary follow-up"

on her application. When plaintiff declined to sign an endorsement to exclude coverage retroactively for "diseases of the breast," defendant purported to cancel the policy.

Plaintiff then brought this action. Defendant relied on the defense of plaintiff's ostensible misrepresentations and nondisclosures on the application. After trial, the jury answered "yes" to the question on the general verdict form:

> "Did defendant * * * breach its contract of insurance by refusing to pay for plaintiff's insurance claims?"

The court later granted defendant's motion for judgment *n.o.v.*

In her first assignment of error, plaintiff contends that the court erred by granting that motion. She argues that there was evidence to support the jury's necessary finding that there were no misrepresentations or omissions on the application that could give defendant the right to refuse coverage and, therefore, the court erred by allowing the motion.

Defendant argues that the pertinent misrepresentations or omissions appear in plaintiff's responses to four questions. Two of the four appear in a 90-question section preceded by the general inquiry, "Have you * * * ever been diagnosed or treated by a physician or health care provider for any of the following problems?" The first of the problems to which defendant maintains that plaintiff inaccurately responded "no" was number 19 on the list: "cysts, tumors or growths." Question number 19 does not refer to breasts or any other specific body part. The first time that the word "breasts" appears in the section is in question 79, with reference to a particular condition that it is undisputed plaintiff did not have. The only other mention of "breast" or "breasts" in this section of the form is in the next question, number 80, which asks about "other breast problem[s]." Defendant contends that plaintiff's "no" answer to that question constituted the second of the four inaccurate or false responses.

The other two putative inaccuracies that defendant relies on appear in a different section of the application, a photocopy of which as plaintiff submitted it to defendant follows:

| 1. Are you or any listed family members scheduled to see a physician at a future date?   ☐ NO ☒ YES —► | If yes, explain, including name of person and physician. 9-1-92 ~ I ..See..m..y..aynerologist..every..t..mo. |
|---|---|
| 2. Do you or any listed family members now have or ever had any sickness, physical ailments or irregular symptoms that are not listed elsewhere on this application?   ☒ NO ☐ YES —► | If yes, explain, including name of person and physician. All ok. 1 ◄ |

The signature area of the application is preceded, *inter alia*, by the following printed declarations, prepared by defendant:

> "I declare that all the information contained in this application is true, correct and complete to the best of my knowledge. I understand that if this application should contain any fraudulent material, misstatements, or omissions, [defendant] may retroactively void the coverage under the policy or modify it retroactively to exclude benefits for the conditions not reported and any related conditions.

> "I further understand that in completeing [*sic*] the medical history portion of this application for myself or any of my family members, that any fraudulent material, misstatements, or omissions, as to the presence of preexisting conditions or disease, will allow [defendant] to retroactively void the coverage under the policy or to retroactively exclude any and all benefits of the coverage for that condition or disease for two (2) years from the date that person's coverage became effective."

■■ If there was any evidence to support the jury's verdict, the trial court erred by granting the judgment *n.o.v.* In order to conclude that there was evidence to support the verdict, under the instructions that were given, we must determine that the jury could properly have found that the answers were not incorrect or incomplete.[2] We conclude that there was ample evidence from which the jury could find that the answers to questions 19 and 80 were correct and complete. The medical evidence and testimony support a finding

___

[1] The notation "9-1-92, All OK" was made by defendant's agent rather than plaintiff herself. For purposes of discussion, we accept defendant's position that plaintiff is responsible for the accuracy of the agent's notation.

[2] The trial court effectively instructed the jury that it could find for plaintiff only if there were *no* misrepresentations or omissions on the application, and all of the information she gave was accurate and complete. The court accepted defendant's legal theory that it was entitled to deny coverage if there were any material misrepresentations or omissions, even if plaintiff did not act intentionally or recklessly in making them. Given the basis for our holding, we need not address that theory. We nevertheless note that we rejected essentially the same theory in *Progressive Specialty Ins. Co. v. Carter*, 126 Or App 236, 241, 868 P2d 32 (1994).

that the 1992 mammogram findings did not *in fact* disclose a cyst, tumor or growth, and that they did not reveal *any* "breast problem." Although defendant's brief refers repeatedly to the area of density as a "nodule," a word that connotes a growth-type formation and that is to be found a few times in the medical evidence, defendant neglects to mention, *inter alia*, that Rothenberger testified at trial that the area was *not* a nodule, and that there was much other medical evidence to indicate that the physicians considered that nothing was found in the mammogram or its aftermath that amounted to a "problem" by any definition. The evidence supported a finding that the two questions were answered accurately, and defendant's efforts to invert the standard of review by stating the facts favorably to itself must fail.

Similarly, there was essentially uncontroverted evidence that plaintiff's answer to question 1 in the other application section, that she was scheduled to see Corwin at the regular six-month interval, was correct. It is not entirely clear what defendant's basis is for contending that plaintiff's answer was a misrepresentation. However, it appears to be that defendant failed to disclose that a possible referral was somehow involved, or that she was to have a mammogram at the time she was to see Corwin. Neither possibility renders the answer to the question that was asked inaccurate or incomplete. Plaintiff was not asked to discern or describe every procedure that was to be performed at the scheduled visit that the question asked about and she answered. The record reveals no scheduled visit except the one with Corwin to which plaintiff's answer refers.

Defendant also finds further ground for complaint in the handwritten notation, "9-1-92, All OK," made by its agent in the margin next to question 1. That notation, too, could readily have been found by the jury to be wholly accurate. Again, both doctors believed that no abnormality or problem was disclosed by the 1992 mammogram. For the same reason, the jury could find that there was no basis for a "yes" answer to question 2 in the section. Defendant relies on the term "irregular symptoms" in that question. However, the term is undefined. Whatever definition it might have, there was abundant evidence to support a factual finding, plainly and simply, that *nothing* was found to be *wrong* by the

1992 mammogram or the events that followed from it, and that no answer on the application that indicated an absence of problems was in any way inaccurate or incomplete.

There was evidence that plaintiff's physicians considered nothing to be out of order, and that that is what they told plaintiff and told one another. Even if that medical *opinion* — and its communication to plaintiff — might not be decisive in itself as to whether the application contained any misinformation, it is not the end of the inferential chain. The fact that no doctor involved in the 1992 events thought that there was any abnormality or problem allowed the jury to infer that no abnormality or problem existed. In short, the jury could find that the doctors were right, and that there was no clinically cognizable problem at the time of the 1992 tests and consultations or at the time that plaintiff completed the application.

To the extent they bear on the first assignment of error, defendant's arguments that ORS 742.013 and the printed declarations on the application form make even innocent material misrepresentation and omissions a ground for refusing coverage do not succeed. Assuming, but by no means concluding, that defendant's legal understandings about the declarations and the statute are correct, *but see* note 2, the declarations, the statute and defendant's arguments are simply irrelevant if, as we conclude, the jury could and presumptively did find from the evidence that there were no misrepresentations or omissions. *Progressive Specialty Ins. Co. v. Carter*, 126 Or App 236, 241, 868 P2d 32 (1994).

Defendant also makes certain arguments based on the premise that plaintiff's malignancy was or developed from a preexisting condition, *i.e.*, the dense area detected by the 1992 mammogram. However, those arguments fail, without more, because there was evidence from which it could be found that the cancer was unrelated to the density detected in the mammogram or to anything else that existed before the mass was found and diagnosed after the policy was issued.

We conclude that there was evidence to support the verdict, and that the trial court erred by allowing the judgment *n.o.v.* That conclusion makes it unnecessary for us to reach plaintiff's remaining assignments. Defendant advances

two cross-assignments of error. The first challenges the court's denial of defendant's motion for a directed verdict, and it necessarily fails along with the judgment *n.o.v.* The second does not warrant discussion.

Reversed and remanded with instructions to reinstate the verdict and enter judgment thereon.